**NOT FOR PUBLICATION**

FILED

SEP 10 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re                                    Case No. 06-10342-A-7F
                                         DC No. DRJ-1
RODGER L. McAFEE

    Debtor.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
RE APPLICATION FOR COMPENSATION BY DARRELL SOUZA**

    A hearing was held August 20, 2008, on the application by Darrell Souza for compensation as real estate broker. Chapter 7 trustee Beth Maxwell Stratton opposed the application. Following testimony by Ana Maria Martel, Dale Samuelian, Beth Stratton, and Darrell Souza, as well as the introduction of documentary evidence, the matter was taken under submission. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A) and (O).

<u>Background Facts.</u>

    Rodger L. McAfee filed a voluntary chapter 11 petition on March 27, 2006. In May 2006, the court ordered the appointment of a chapter 11 trustee, and Stratton was appointed chapter 11 trustee on May 15, 2006. Subsequently, the case was converted to chapter 7, and Stratton was appointed as chapter 7 trustee.

    A major asset of the estate was real property consisting of

1,477 acres, more or less, located at 2025 West Washington Road, El Nido, California (the "El Nido Property"). Stratton sought this court's authority to employ Darrell Souza as real estate broker to market and sell the El Nido Property. That Application was filed May 30, 2006. The Application states at paragraph three that:

> "If Broker has rendered services which have substantially benefitted the estate and either the debtor's Chapter 11 case is converted over to a case under Chapter 7 or the Property is disposed of by Trustee other than by sale through Broker, Broker shall be entitled to submit a fee application for compensation at the hourly rate of $150 per hour for his services rendered."

At the time the chapter 11 case was filed, the debtor was indebted to the United States of America, Department of Agriculture Farm Service Administration (the "USDA") under a number of farm loans made during the 1980's. These loans were secured by the El Nido Property. In 1996, the USDA filed an action for foreclosure in the United States District Court for the Eastern District of California. The District Court granted the United States' motion for an order of judicial sale and for final order of foreclosure. The bankruptcy case was ultimately filed on the eve of the foreclosure sale.

On August 16, 2006, the USDA filed its proof of secured claim in the amount of $6,714,874.09. As of March 20, 2007, the claim amount was $6,819,812.32, together with accruing interest and attorneys' fees and costs.

Prior to the time the trustee employed Souza and the court approved that employment, the debtor had contemplated employing Souza as broker. Therefore, when the trustee employed him, Souza represented to the trustee that he was familiar with the El Nido

Property.

Subject to court approval, which was granted, the trustee and Souza entered into an "Exclusive Right to Sell Listing Agreement" (the "Listing Agreement"). The Listing Agreement gave Souza an exclusive authorization to sell the El Nido Property from June 5, 2006, through November 5, 2006. The Listing Agreement provides at paragraph one for the terms of compensation to the broker. Paragraph one provides that Souza will be entitled to 5% of the selling price, provided that:

> "a. Broker procures a buyer who offers to purchase the property during the above time period, or any written extension, on the terms specified or on any other terms acceptable to Owner.
>
> b. The property is sold, exchanged, or otherwise transferred during the above listing period, or any written extension, by Owner, of through any other source.
>
> c. The property is withdrawn from sale, or transferred, conveyed, or leased without the consent of Broker, or made unmarketable by Owner's voluntary act during the above listing period.
>
> d. An agreement to sell or exchange the property is made by owner within ninety (90) days after the termination of this Agreement to persons with whom Broker has had negotiations during the listing period; provided that the names of such persons are submitted in writing to the owner prior to the Owner entering into a new listing agreement with another broker or within five (5) days after the termination of this Agreement, whichever occurs first. Presentation of a written offer during the term of the listing constitutes sufficient notice of such persons. this provision will not apply if, during the term of the protection period, a valid Exclusive Listing Agreement is entered into with another licensed real estate broker."

The Listing Agreement expired on November 5, 2006, without a sale. However, on January 12, 2007, Souza and the trustee entered into a modification of the Listing Agreement. The modification provided that the Listing Agreement would expire on July 1, 2007, and that:

> "The commission shall be 2½% for any sale which results from Stratton's auction of the property."

During the initial listing term, Souza presented two offers to the trustee. One offer was for $4,000,000 and the other offer was for $5,000,000. The trustee rejected the $4,000,000 offer because she did not believe that the USDA would accept it. At the hearing, the trustee testified that she did not recall the $5,000,000 offer although she was made aware of it in preparation for the hearing. In any event, she would not have accepted it.

Having received no acceptable offers during the initial term of the Listing Agreement, the trustee decided to auction the El Nido Property. She discussed the auction concept with Souza, who was enthusiastic about it. The modification of the Listing Agreement provided for the El Nido Property to be auctioned.

A hearing on the auction was held July 11, 2007. Prior to that date, Souza had assured the trustee that he had a buyer who would bid $6,000,000 for the El Nido Property and that other people would appear at the auction hearing to overbid. Nonetheless, no bidders appeared at the auction hearing.

Ana Maria Martel is the Assistant United States Attorney who represents the USDA with respect to the McAfee debt. Ms. Martel testified that she talked regularly with Ms. Stratton about the prospects for sale of the El Nido Property. She had been led to understand that there was a great deal of excitement about the auction. Souza had represented that there would be a $6,000,000 opening bid and a number of bidders. No one appeared. Souza recommended reducing the price, but the USDA disagreed. Martel was very disappointed about the results of the auction based on

4

what she had been led to believe by Souza.

Ana Maria Martel was contacted by Darrell Souza prior to the auction in July 2007. Souza telephoned her to inquire if the USDA would sell its interest in the notes it held on the El Nido Property for $4.2 million. Martel declined the offer and telephoned Stratton to let her know about the proposal from Souza.

Both Stratton and Martel testified that Souza had contacted Martel prior to the auction date, during the term of the extended Listing Agreement, to propose that the USDA sell its notes for $4.2 million. Souza, on the other hand, testified that he did not contact Martel until after the auction and after his listing had expired. The court finds the testimony of Stratton and Martel to be more credible in this regard.

After the failed auction, Stratton decided to employ a different broker. She employed Pearson Realty, Dale Samuelian broker. The application to employ Pearson Realty was filed July 24, 2007, and the order granting the application was filed August 1, 2007. Samuelian procured a buyer for the El Nido Property, and following a hearing on noticed motion, the El Nido Property was sold for $5,600,000.

After Samuelian was employed, he inspected and researched the El Nido Property. He determined that the El Nido Property is subject to the Williamson Act and thus may not be split into twenty acre parcels. He determined that there is no water on the El Nido Property and there are no well heads. There was no farming history with the Farm Service Administration. He also determined that there were open well casings on the El Nido

Property and that the open well casings present a significant risk of harm and liability. Because of the lack of developed water and the Williamson Act restriction, Samuelian advised the trustee that the El Nido Property had previously been listed at an overly high price. On this advice, the trustee and the USDA agreed to reduce the listing price, and a sale was effectuated. Souza had never advised the trustee about the open well casings or about the Williamson Act restrictions.

Souza asks the court to approve compensation to him pursuant to paragraph three in the Application for authority to employ him. He asserts that paragraph three applies to him and that he provided a benefit to the estate. The trustee disputes both contentions.

In support of his application, Souza has provided the court with time sheets and cost records. At the hearing, he testified that some time after the services were performed, he and his assistant utilized his telephone and e-mail records to prepare the time sheets. He believes that he spent more time trying to sell the El Nido Property than the time records indicate.

Discussion.

There is no dispute that the sale of the El Nido Property occurred outside the parameters of Souza's Listing Agreement. The parties agree that Souza did not procure the sale and that he is not entitled to compensation under paragraph one of the Listing Agreement. He did not procure the buyer; the El Nido Property was not sold during the listing period or the extension of it; the El Nido Property was not withdrawn from sale without Souza's consent or made unmarketable; it was not sold within

6

ninety days of the termination of the Listing Agreement to anyone with whom Souza had had negotiations.

Therefore, if Souza is to be allowed any compensation, it must be solely under the terms of paragraph thee of the Application for authority to employ him.  Again, paragraph three states:

> "If Broker has rendered services which have substantially benefitted the estate and either the debtor's Chapter 11 case is converted over to a case under Chapter 7 or the Property is disposed of by Trustee other than by sale through a Broker, Broker shall be entitled to submit a fee application for compensation at the hourly rate of $150 per hour for his services rendered."

The trustee testified that this language is typically used by chapter 7 trustees.  According to the trustee, the purpose of this language is to allow compensation to real estate brokers in chapter 7 cases when either the debtor converts to chapter 13 after employment of the broker or the trustee sells the estate's interest in the property to the debtor after the employment of the broker.  In either of those instances, the broker's services in marketing the property arguably benefit the estate.  If the debtor converts to chapter 13 after a chapter 7 trustee seeks to sell the debtor's property, the debtor will be required to propose a chapter 13 plan that pays creditors at least the liquidation value of the property the chapter 7 trustee sought to sell.  If a chapter 7 trustee sells the estate's interest in real property to a chapter 7 debtor, the creditors and the estate benefit.  Therefore, it is not uncommon for trustees to seek approval of compensation on an hourly rate basis for brokers in both situations.

The trustee did not explain why the language was included in

the Application to employ Souza, but the trustee did state that she did not believe it is applicable here. Rather, according to the trustee, Souza should rely entirely on his Listing Agreement which does not provide for compensation here.

The language in paragraph three of the Application is typically found in applications to employ brokers in chapter 7 cases. The trustee did include this language in the Application in this case. It says that if Souza, as broker, "has rendered services which have substantially benefitted the estate," and the El Nido Property "is disposed of by Trustee other than by sale through" Souza, Souza shall be entitled to submit a fee application for compensation at an hourly rate of $150 per hour.

The paragraph does apply. The question then remains whether Souza rendered services that substantially benefitted the estate. The court is unable to find that Souza did render services that substantially benefitted the estate.

Souza did not inform the trustee about the open well casings. And, he did testify that it was his responsibility to so advise the trustee. He also testified that he believed the well casings were covered with plywood. Nonetheless, he did have a responsibility to inform the trustee about the open well casings, and he failed to carry it out.

The brochure that Souza prepared does not inform potential buyers that there are Williamson Act restrictions on the El Nido Property so that it cannot be split into twenty acre parcels. In fact, the brochure Souza prepared states, "Zoning A-1 General Agriculture, minimum 20 acre parcels."

The brochure that Souza prepared showed that there was "pipe

8

line irrigation" while in fact the El Nido Property lacks irrigation.

Finally, Souza breached his duty to the trustee by presenting to the USDA, during the term of his Listing Agreement, an offer from a buyer to purchase the notes held by the USDA.

The time records that Souza asks the court to consider in support of his application are not persuasive. For instance, he includes over 20 hours for labeling and addressing post cards, a clerical task, for which he asks the court to allow compensation of $150 per hour.

He also asks the court to approve reimbursement of his expenses for purchase of post cards, newspaper ads, postage and delivery services, in the amount of $3,355.10. Nothing in paragraph three of the Application would allow compensation for expenses.

Souza has not demonstrated that he provided a substantial benefit to the estate. While he did present the trustee with an offer for $4,000,000 and an offer for $5,000,000, he failed to inform the trustee about the true condition of the El Nido Property. Despite the extension of his Listing Agreement, he was unable to procure a sale.

Although the language about compensation to a broker in paragraph three of the Application to employ Souza is facially applicable, under the facts of this case, it cannot result in compensation to Souza. This case is unlike the two fact scenarios for which paragraph three was designed. In each of those instances (conversion to chapter 13 after employment of a broker in a chapter 7 case or sale of the non-exempt equity in

1  property to a chapter 7 debtor after employment of a broker in a
2  chapter 7 case), the work by the broker actually benefits the
3  estate.   Here, Souza's work did not substantially benefit the
4  estate.   For the foregoing reasons, the court will issue an
5  order denying the application.
6  DATED: September 10, 2008

_____
WHITNEY RIMEL, Judge
United States Bankruptcy Court

```
1                    PROOF OF SERVICE BY MAIL
2   STATE OF CALIFORNIA        )
                               ) ss.
3   COUNTY OF FRESNO           )
4        I am a citizen of the United States and a resident of the
5   county aforesaid; I am over the age of eighteen years and not a
6   party to the within above-entitled action; my business address is
7   2656 U.S. Courthouse, 1130 O Street, Fresno, California, 93721.
8   On September 10, 2008, I served the within document on the
9   interested parties in said action by placing a true copy thereof
10  enclosed in a sealed envelope with postage thereon fully prepaid,
11  in the United States mail at Fresno, California, addressed as
12  follows:
13  Thomas H. Armstrong, Esq.
    5250 N. Palm, Suite 224
14  Fresno, CA 93704
15  Beth Maxwell Stratton
    Chapter 7 Trustee
16  P. O. Box 3930
    Pinedale, CA 93650
17
    David R. Jenkins, Esq.
18  P. O. Box 1406
    Fresno, CA 93716
19
20
         I certify (or declare), under penalty of perjury, that the
21
    foregoing is true and correct.  Executed on September 10, 2008,
22
    at Fresno, California.
23
                                      _____Kathy Torres_____
24                                    Kathy Torres, PLS
25
26
27
28
                                  11
```